```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
ROBERT MIMS,                             :
                    Plaintiff,           :
                                         :    07 Civ. 1926 (DLC)
         -v-                             :
                                         :    OPINION AND ORDER
CORRECTION OFFICER D. UFLAND,            :
CORRECTION OFFICER B. STEVENS,           :
CORRECTION OFFICER R. WESTFIELD,         :
CORRECTION OFFICER M. SEAMAN,            :
CORRECTION OFFICER M. RHYNDERS,          :
CORRECTION OFFICER R. TILLEY,            :
CORRECTION OFFICER S. NILES, SERGEANT    :
M. SCOTT, SERGEANT S. ROGERS, SERGEANT   :
LONZACK, DIRECTOR THOMAS G. EAGEN,       :
HEARING OFFICER GERARD GUINEY, GREEN     :
HAVEN SUPERINTENDENT ROBERT ERCOLE,      :
DIRECTOR DONALD SELSKY and JOHN DOES 1-  :
8,                                       :
                    Defendants.          :
                                         :
----------------------------------------X
```

Appearances:

For Plaintiff:
Jason L. Lopez
325 Broadway, Suite 404
New York, New York 10007

For Defendants:
Christine Anne Ryan
Office of New York State Attorney General
120 Broadway, 24th Floor
New York, New York 10271

DENISE COTE, District Judge:

Plaintiff Robert Mims ("Mims") brings this action pursuant to 42 U.S.C. § 1983 alleging various deprivations of his constitutional rights during his incarceration at Green Haven

Correctional Facility ("Green Haven"). Mims filed an amended complaint on August 10, 2007, which included causes of action (1) under the Eighth Amendment in connection with a beating he allegedly suffered at the hands of the staff at Green Haven on March 27, 2006 (the "March 27 attack"); (2) under the Due Process Clause in connection with a grievance and a disciplinary proceeding related to the March 27 attack; (3) under the Eighth Amendment for denial of medical care; (4) under New York State law for assault and battery; and (5) under New York State law for general negligence. On August 21, 2007, defendants filed a partial motion to dismiss the state law causes of action, as well as the Eighth Amendment claim alleging denial of medical care. In his opposition, Mims agreed to withdraw his state law claims; an Opinion dated November 21, 2007, denied the motion as to the Eighth Amendment medical care claim.

Defendants now move for partial summary judgment as to (1) the medical care claim, (2) the Due Process claim, and (3) the Eighth Amendment claim arising out of the March 27 attack insofar as it is alleged against defendants Sergeants Scott and Lonzack, and Officers Niles, Rhynders, Tilley, and Stevens, whom defendants claim were not personally involved in the alleged

attack.[1] In his opposition, Mims withdraws the medical care claim, and all claims against defendants Director Thomas G. Eagen, Green Haven Superintendent Robert Ercole, Director Donald Selsky, and Officer Niles. Mims does defend his Eighth Amendment claim as to the sergeants and officers noted in defendants' summary judgment motion, as well as the due process claim against defendant Hearing Officer Gerard Guiney regarding his conduct of Mims's disciplinary proceeding.[2] In reply, defendants reassert that the due process claim should be dismissed, and that Sergeants Scott and Lonzack were not personally involved in the March 27 attack.[3] Thus, as presently configured, the claims to be addressed in this motion are the Eighth Amendment claims against Sergeants Scott and Lonzack and the due process claim against Hearing Officer Guiney. For the

---

[1] Defendants concede that the Eighth Amendment claim as to defendants Sergeant Rogers and Officers Ufland, Westfield, and Seaman involves disputed issues of material fact.

[2] In opposition, Mims also argues that defendants' motion papers are deficient because certain exhibit pages were missing. Defendants counter that this was inadvertent, that Mims had been given these pages during discovery, and that they have now filed the missing pages. No further discussion of this issue is necessary.

[3] Although the reply briefly mentions Officers Rhynders, Tilley, and Stevens, no argument is presented as to those defendants in response to the plaintiff's identification of various passages of Mims's deposition during which the involvement of these Officers was described. Defendants are therefore considered to have abandoned their argument that no issues of disputed fact remain as to the personal involvement of Officers Rhynders, Tilley, and Stevens in the March 27 attack.

following reasons, defendants' motion for partial summary judgment is denied in part and granted in part.

BACKGROUND

The following facts are relevant to the issues presented by this motion, and are either undisputed or taken in the light most favorable to Mims, unless otherwise noted. During all relevant times, Mims was incarcerated at Green Haven. On February 13, 2006, while traveling to the evening meal, Mims was confronted by Officer Ufland, who cursed at him and directed him to return to his cell. Afterward, cold food was delivered to Mims and approximately twenty other inmates that had not been permitted to eat at the mess hall. Mims promptly filed a grievance regarding this incident.

The next day, Sergeant Lonzack indicated to Mims that he "had no business" filing a grievance against Officer Ufland and told Mims that he would not process his grievance. Sergeant Lonzack also told Mims that he should "watch [himself]," which Mims understood to be some form of threat. For these actions, Mims also filed a grievance against Sergeant Lonzack.

On the afternoon of March 27, 2006, Officer Ufland again confronted Mims while he, in the company of a group of fellow inmates, was on his way to the mess hall. Again using foul language, Officer Ufland told Mims to stand against a nearby

4

wall so that he could be searched. He was then frisked by another officer, and again told by Officer Ufland to return to his cell. Mims verbally protested, but did return to his cell and began writing up another grievance against Officer Ufland. Upon his return, Mims was placed in "keeplock" status.[4]

At approximately 5:50 p.m. that same day, Mims's cell was opened for the apparent purpose of allowing him to take a shower. Mims was uncertain whether he was permitted to shower due to his keeplock status, but he exited the cell with his soap, towel, and wash cloth and headed toward the shower. When he arrived at the shower door, he discovered that it was locked. He then yelled to the officer in the nearby "bubble," Officer Seaman, to tell him that the shower was locked. Mims asked Officer Seaman why he was let out for a shower if the shower door was locked, at which time Officer Westfield arrived, approached Mims, and asked him, in vulgar terms, why he was out of his cell. Mims explained that his cell had been opened for him to shower; Officer Westfield did not respond, but rather closed an adjacent door, thereby preventing Mims from returning to his cell.

---

[4] "Keeplock is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." Peralta v. Vasquez, 467 F.3d 98, 104 (2d Cir. 2006) (citation omitted).

5

Thereafter, approximately four other officers arrived, including Officer Ufland. These officers told Mims to stand against the wall, at which time, Mims alleges, they began to beat him, including hitting him in the head, back, and legs with batons. Mims also alleges that he was kicked in the face by Officer Ufland and stabbed in the leg with an unknown object by Officer Stevens. Mims was handcuffed, taken downstairs into a supply room, and thereafter to the Special Housing Unit ("SHU") and the medical facility, during which time, Mims alleges, the beating and verbal abuse continued while Mims loudly protested.

Although Mims could not identify all of the prison officials who were involved with the attack -- at his deposition, Mims indicated that it seemed as though as many as twenty officers were present -- he testified at his deposition that, in addition to the officers noted above (Westfield, Seaman, and Ufland), Sergeant Scott and Sergeant Rogers were involved in taking him downstairs and to the SHU, and that Sergeant Scott admitted him to the SHU. Contemporaneous inter-departmental memoranda written by Officers Rhynders and Tilley indicate that they also responded at the scene of the incident and were involved in escorting Mims to the SHU, and a "Report of Strip Frisk on Admission to SHU" further indicates that Sergeant Scott was present during Mims's admission to the SHU. Finally, Officers Ufland, Westfield, Seaman, and Sergeant Rogers

6

completed memoranda that indicate that they were present at and involved in the incident.[5]

Mims alleges that, when he was examined following the attack, his lip, leg, and mouth were bloody. During the subsequent disciplinary proceeding, however, medical staff who treated Mims testified that while Mims did have a small laceration on his leg, another on his lip, and some pain in his right hand, he had no notable bruises or injuries consistent with an attack of the severity described by Mims.

Later on March 27, an inmate misbehavior report was issued to Mims, authored by Officers Ufland and Niles. Mims was charged with violations of prison rules regarding violent conduct, creating a disturbance, assault on staff, and the possession of alcohol (which Officer Niles reported had been discovered in Mims's cell during a search on the evening of March 27). Defendant Guiney was assigned to conduct the Tier III disciplinary hearing on these charges, which commenced on April 2, 2006, and concluded on May 3, when Mims was found guilty on all four charges and sentenced principally to eighteen months in the SHU and loss of various privileges for twenty-four

---

[5] These memoranda present a different version of events, in which Mims initiated the incident by striking Officer Ufland in the face, and in which Mims was not repeatedly struck or beaten, but rather subdued using, in the words of Sergeant Rogers's memorandum, "only minimal and necessary" force, consisting principally of "body holds" and handcuffs.

months. As discussed in greater detail below, Mims alleges that Guiney was a biased and partial hearing officer because he did not permit him to call certain witnesses, curtailed relevant witness testimony, improperly removed him from the hearing, unreasonably credited the testimony of corrections officers, and generally displayed a biased and unfair attitude toward Mims.

DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims or defenses cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed. R. Civ. P.; accord Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006). Only disputes over material facts,

facts that might affect the outcome of the suit under the governing law, will properly preclude the entry of summary judgment. Anderson, 477 U.S. at 248.

As noted, only two issues presented by defendants' partial motion for summary judgment remain to be decided here: whether a material issue of disputed fact exists regarding (1) the personal involvement of Sergeants Scott and Lonzack in the March 27 attack, and (2) the due process claim against Guiney. These issues will be addressed in turn.

I. Personal Involvement of Sergeants Scott and Lonzack

It is well-settled that "[p]roof of an individual defendant's personal involvement in the alleged wrong is . . . a prerequisite to his liability on a claim for damages under § 1983." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001). First, defendants contend that Mims has not proffered evidence that Sergeant Scott was personally involved in the March 27 attack, noting particularly that Mims's deposition testimony indicates that Mims does not know who was involved in transporting him downstairs or into the supply room. Furthermore, Sergeant Scott has submitted a declaration stating that he did not respond at the scene of the alleged attack, and that his "only connection to Mr. Mims" on March 27, 2006, was related to the later search of his cell.

Based on the record submitted by the parties, a material issue of disputed fact exists as to Sergeant Scott's personal involvement in the alleged March 27 attack. Officer Seaman testified at the Tier III hearing that it was Sergeant Scott who placed restraints on Mims at the scene of the alleged attack. Defendants also overlook portions of Mims's deposition testimony during which he indicates that, although he was disoriented due to the alleged attack, he believed that either Sergeant Scott or Sergeant Rogers was involved in escorting him downstairs. Thus, based on the current record, a reasonable jury could conclude that Sergeant Scott was "personal[ly] involve[d] in the alleged wrong." Id.

Second, while defendants do not dispute at this stage that Sergeant Lonzack refused to process Mims's grievance against Officer Ufland and told Mims to "watch [himself]," they argue that because Mims "does not place Sergeant Lonzack at the scene of the use of force," Mims has not proffered sufficient evidence to create a triable issue of fact as to that defendant's personal involvement in the March 27 attack. Although defendants' analysis of this point misses the mark, there is nevertheless insufficient evidence in the record to permit a reasonable jury to conclude that Sergeant Lonzack was personally involved in the March 27 attack.

Contrary to defendants' contention, personal involvement is not a concept limited to physical presence.

> The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

Iqbal v. Hasty, 490 F.3d 142, 153 (2d Cir. 2007) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). Here, Mims's deposition testimony regarding Sergeant Lonzack, if credited, could lead a reasonable juror to conclude that (1) Sergeant Lonzack exercised some supervision over Officer Ufland, insofar as he was reviewing Mims's grievance regarding her conduct, and (2) Sergeant Lonzack was aware that Officer Ufland or other officers held a grudge against Mims as a result of his grievances. It would be pure conjecture to conclude further based on this testimony, however, that Lonzack "knew or should have known that there was a high degree of risk that" Officer Ufland or others would engage in an act of physical violence against Mims, "but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk." Poe v. Leonard, 282 F.3d 123, 142 (2d Cir. 2002). Mims has identified no other evidence in the record in support of this theory. Thus, summary

11

judgment will be granted to the defendants on Mims's excessive force claim insofar as it is asserted against Sergeant Lonzack.

II. Due Process and the Tier III Proceeding

Mims claims that his due process rights were violated because Hearing Officer Guiney was biased in his conduct of the Tier III proceeding. As evidence of Guiney's bias, Mims cites the following: that Guiney (1) refused to call certain witnesses and curtailed Mims's questioning of certain witnesses; (2) unreasonably credited the testimony of prison staff and found Mims guilty on all four charges; (3) removed Mims from the hearing; and (4) generally "exhibited an attitude of bias and predisposition" regarding Mims's guilt and credibility. Notably, however, Mims's opposition to the motion for summary judgment makes clear that he does not contend that each of these actions constitutes a separate due process violation -- and, indeed, the record and case law generally would not support such claims[6] -- but rather that these actions collectively demonstrate

---

[6] In particular, to the extent that Mims alleges that his due process rights were violated because Hearing Officer Guiney did not permit him to call certain witnesses, Mims acknowledged at his deposition that the fifteen additional witnesses he was not allowed to call "would [have] nothing different to testify to" than the five witnesses he called. Mims stated, "[e]verybody would have testified to the same thing." While an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense," Wolff v. McDonnell, 418 U.S. 539, 566 (1974), witnesses

12

that Guiney lacked the impartiality required to conduct the Tier III hearing in accordance with constitutional standards.

It is undisputed that Mims had a constitutional right to have a "fair and impartial hearing officer" preside over his Tier III disciplinary hearing. See, e.g., Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). "The degree of impartiality required of prison officials," however, "does not rise to the level of that required of judges generally. It is well recognized that prison disciplinary hearing officers are not

---

requested by an inmate need not be called if their testimony would be "irrelevant or unnecessary." Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999). Guiney explained at the hearing that while Mims would only be permitted five witnesses initially, "if at any time you can demonstrate [that] one of the other ones could add something that the other [five] haven't done, then we'll call them up." Similarly, with regard to any claim that witnesses were questioned outside of Mims's presence, or that Mims was deprived of an opportunity to cross-examine those witnesses by his removal from the hearing, it must be noted that "[i]t is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate. Nor does an inmate have a constitutional right of confrontation," id. (citing, inter alia, Wolff, 418 U.S. at 567-68), or cross-examination, Wolff, 418 U.S. at 567-68. While the case law does imply that Mims had a limited right to be present at the hearing, compare Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992) (noting that the prisoner must be provided "the opportunity to appear at the hearing and to call witnesses"), with Francis v. Coughlin, 891 F.2d 43, 48 (2d Cir. 1989) ("Prison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding."), that right is certainly not absolute, and can be waived by engaging in disruptive conduct. Cf. Davis v. Grant, -- F.3d --, 2008 WL 2651096, at *8 (2d Cir. July 8, 2008) (noting the circumstances in which a criminal defendant may be removed from the courtroom).

13

held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996). Nevertheless, a hearing officer must "not prejudge the evidence" or state with certainty "how he would assess evidence he has not yet seen." Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990). See also Colon, 58 F.3d at 871 (summary judgment not appropriate on bias allegation where statement made by hearing officer "at least creates an issue of fact as to whether [the Hearing Officer] refused even to consider, on the evidence, the merits of [the plaintiff's] principal defense to the charges against him."); Francis, 891 F.2d at 46 (noting that "it would be improper for prison officials to decide the disposition of a case before it was heard"); cf. Edwards v. Balisok, 520 U.S. 641, 647 (1997) ("The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence.")

Mims has not cited sufficient evidence of bias to permit a reasonable jury to conclude that Hearing Officer Guiney was a biased and partial hearing officer. Although Mims has identified several decisions made by the hearing officer during the course of the proceeding that he contends were mistaken, Mims has not identified any evidence indicating that these

decisions were the result of bias rather than reasoned decisionmaking with which Mims simply disagrees. Fair-minded hearing officers could have decided the issues to which Mims points in different ways. Mims has not shown that any of Guiney's rulings fall outside the range of reasonable conduct for unbiased hearing officers.

The transcript of the Tier III proceeding, on which both parties rely and the accuracy of which is not contested, reveals that Hearing Officer Guiney permitted Mims to present his defense to the charges -- i.e., that he did not attack the staff on March 27, but rather the staff attacked him -- and admitted testimony from several inmates who corroborated Mims's account. In addition, the transcript and hearing record demonstrates that Hearing Officer Guiney obtained several adjournments of the hearing for the purpose of obtaining witnesses requested by Mims, including the one inmate who had been transferred to another facility, who ultimately testified via telephone. No competent evidence of bias can be gleaned from these events.

Many of Mims's complaints regarding Hearing Officer Guiney's conduct of the hearing relate to Guiney's decision to focus the testimony almost exclusively on accounts of what took place at approximately 5:50 p.m. on March 27, 2006, the time of

the alleged attack,[7] and not to permit questioning or testimony regarding other topics, including prior confrontations between Officer Ufland and Mims.  Mims fails to acknowledge, however, that a hearing officer may refuse to admit testimony or documents when they would be irrelevant or unnecessary to a determination of the issues in the disciplinary hearing. Kalwasinski, 201 F.3d at 109.  Mims has not pointed to admissible evidence indicating that Hearing Officer Guiney's relevance determinations were driven by bias against Mims rather than a conclusion regarding which topics would (or would not) shed light on whether Mims was (or was not) guilty of the charges against him.  A reasonable jury therefore would have no basis to conclude that these evidentiary rulings were evidence of bias.

Finally, and perhaps most importantly, Hearing Officer Guiney's decision to credit the account of the events of March 27 presented by the officers and not the inmates -- and thus to find Mims guilty of the disciplinary charges -- was supported by ample evidence, and is not evidence of bias.  Cf. Sira, 380 F.3d at 76 (citing Superintendent v. Hill, 472 U.S. 445, 454-56 (1985)).  The written disposition noted in particular that Mims's injuries, described by prison nurses as little more than

---

[7] This included, of course, medical testimony that could further illuminate that issue.

minor lacerations and pain in his right hand (or ankle, according to one witness), "were consistent with the staff's report" of the incident and not the testimony provided by the inmates, who described Mims receiving a severe beating at the hands of Officers Ufland, Westfield, and others.[8] Mims has not offered any cogent argument explaining why Hearing Officer Guiney's conclusion that the medical testimony corroborated the corrections officers' accounts of the events of March 27 was evidence of bias.[9]

In sum, Mims has not identified any evidence indicating that Hearing Officer Guiney "refused even to consider, on the evidence, the merits of [the plaintiff's] principal defense to the charges against him," Colon, 58 F.3d at 871, that he otherwise "prejudge[d] the evidence" in Mims's case, Patterson, 905 F.2d at 570, or "dishonestly suppresse[d] evidence of

---

[8] Inmate Gonzalez, for example, testified that the first officer to arrive on the scene (presumably Officer Westfield) was the first to punch Mims, and that when the other officers arrived, they "threw [Mims] on the floor and they held him down punching him while [Officer Ufland] continuously beat him with her stick, striking him in the head and poking him with it, nonstop, I mean, it was crazy."

[9] Although Mims identifies various inconsistencies in the officers' accounts, and argues that the hearing officer should have therefore concluded that their testimony was not credible, Mims does not acknowledge the larger point, on which Hearing Officer Guiney focused -- namely, that the medical testimony appeared to conclusively contradict the version of events described by Mims and his witnesses -- nor has he identified admissible evidence tending to show that Guiney's conclusion on this point was a result of bias against Mims.

17

innocence." Edwards, 520 U.S. at 647. Summary judgment therefore will be granted to the defendants on this claim.

CONCLUSION

Defendants' partial motion for summary judgment, filed on April 15, 2008, is granted in part and denied in part. Defendants Director Thomas G. Eagen, Green Haven Superintendent Robert Ercole, Director Donald Selsky, Sergeant Lonzack, Correction Officer Niles, and Hearing Officer Gerard Guiney are dismissed from this action. The Eighth Amendment claim against defendants Sergeants Rogers and Scott and Officers Ufland, Westfield, Seaman, Rhynders, Tilley, and Stevens is the only claim remaining in this action. An Order issued in conjunction with this Opinion will set a schedule for further proceedings.

SO ORDERED:

Dated: New York, New York
August 1, 2008

_____
DENISE COTE
United States District Judge